UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Timothy J. Hay, *et al.*, | ) | CASE NO. 1:19 CV 2645 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| John Shirey, *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendants' Motion to Enforce Non-Economic Damages Caps as to Plaintiff Greg Roth (Doc. 52). Also pending is defendants' Motion To Strike (Doc. 61). This is a personal injury case. For the reasons that follow, the motion to enforce damages cap is GRANTED and the motion to strike is DENIED.

**FACTS**

Plaintiffs, Gregory Roth and Susan Roth, bring this action against defendants, Jon Shirey, Cal-Ark International, and Arkansas Equipment Leasing, to recover damages for injuries

1

sustained when a tractor-trailer driven by Shirey collided with a vehicle in which Roth was a passenger. This Court accepted this case as related to a separately filed lawsuit brought by the driver of the vehicle, Timothy Hay. The Court previously denied a motion brought by defendants with regard to the applicability of the damages cap as to Hay. This motion applies only to Roth.

Roth sustained serious injuries after Shirey lost control of a tractor-trailer driven in the northbound lane of Interstate 71. The tractor-trailer crossed the median into the southbound lane of the highway, hitting Hay's vehicle, and "crushing" it against the sound-barrier wall. Both Roth and Hay were mechanically extracted from the vehicle and life-flighted to area hospitals.

As a result of the accident, Roth sustained fractured ribs, a collapsed lung, chest trauma, injuries to his spleen, kidneys, and left shoulder. Roth also suffered from blood loss, lacerations and bruising. Roth does not dispute defendants' assertion that these injuries have largely healed and that he no longer receives treatment.

In addition to the foregoing, Roth sustained a brain injury. According to Dr. Manfred, Roth's treating physician, the brain injury was confirmed "on CT scan.[1]" This injury is the focus of the motion. Defendants move for summary judgment on the basis that the injuries do not meet the definition set forth in O.R.C. § 2315.18(B)(3). As such, the Court should enforce Ohio's noneconomic damages cap. Plaintiffs oppose the motion.

**STANDARD OF REVIEW**

Summary Judgment is appropriate when no genuine issues of material fact exist and the

---

[1] Nearly all of the facts set forth by Roth are unsupported by any citation to the record. By way of example, Roth indicates that two head CTs were performed, which showed "acute intraparenchymal hemorrhage in the left frontal lobe and left parietal lobe." But, there is no evidence supporting this statement.

2

moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

## **ANALYSIS**

1. Motion to strike

Defendants argue that the expert affidavits relied on by plaintiffs must be stricken. Defendants point out that the expert reports were provided on January 4, 2021. The deadline for filing the reports was January 1, 2021. To the extent defendants are claiming that the expert reports were untimely, the motion is DENIED. January 4, 2021 is the first business day after the January 1, 2021 holiday. The affidavits will not be stricken on that basis.

Defendants also argue that the affidavits contain new opinions that were not previously disclosed. Defendants, however, wholly fail to identify any "new opinion" and provide no analysis or argument as to what content is allegedly "new." Accordingly, defendants' request is denied.

2. Damages cap

According to defendants, Roth no longer has any physical limitation from his injuries. Rather, his injuries consist of psychological symptoms, including anxiety, depression, and post-traumatic stress disorder. Defendants argue that Roth was cleared to return to work. Defendants point out that Roth is able to "travel and drive intermittingly" and is able to enjoy recreational activities.

In response, Roth argues that he suffered a traumatic brain injury, which is a physical

injury. Although the resulting symptoms are psychological in nature, Ohio law lifts the damages cap where psychological injuries arising from a physical injury result in the inability to care for oneself and perform life-sustaining activities. Here, Roth claims that his traumatic brain injury caused psychological symptoms that prevent him from returning to work.

Ohio laws provides a cap on noneconomic losses recoverable in a tort action. There is, however, an exception to the cap. Section 2315.18(B)(3) provides:

> (3) There shall not be any limitation on the amount of compensatory damages that represents damages for noneconomic loss that is recoverable in a tort action to recover damages for injury or loss to person or property if the noneconomic losses of the plaintiff are for either of the following:
>
> (a) Permanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system;
>
> (b) Permanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities.

Roth does not identify which provision applies to his injuries and, instead, conflates the two concepts. In reviewing them separately, the Court finds that there are no genuine issues of material fact and Ohio's damages cap applies to Roth.

Section 2315.18(B)(3)(a) lifts the damages cap if the plaintiff suffers a permanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system. Plaintiff does not claim that he lost the use of a limb or bodily organ system. Although plaintiff points out that the CT showed a brain injury, plaintiff points to no evidence suggesting that there is a "permanent and substantial physical deformity" remaining in plaintiff's brain or skull.

Roth points out that this Court distinguished *Weldon v. Presley*, 2011 WL 3749469 (N.D. Ohio Aug. 9, 2011) when ruling on a similar motion filed by defendants as to Hay. In *Weldon*,

the court determined that a small scar does not qualify as a "permanent and substantial deformity." This court noted that Hay's physical injuries consist of much more than a small scar, including the insertion of hardware in various body parts, malformation to his leg, scarring, and abnormal bone growth in his foot. As such, *Weldon* was distinguishable. Here, however, Roth points to no permanent physical deformity. In a footnote, Roth notes that he has two 7-8 centimeter scars. But, Roth does not provide any evidence supporting this assertion. As such, there is no evidence from which a jury could conclude that these two scars amount to a "*substantial*" deformity. Accordingly, the Court finds that no question of fact exists and defendants are entitled to a finding that the exemption in Section 2315.18(B)(3)(a) does not apply as a matter of law.

The Court also finds that Section 2315.18(B)(3)(b) does not apply. That provision provides that the damages cap will be lifted if a plaintiff suffers a "permanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities." Here, the Court need not determine whether plaintiff's brain injury and resulting symptoms amount to a "permanent physical functional injury" because the evidence presented by Roth is insufficient, as a matter of law, to establish that Roth cannot "independently care" for himself and "perform life-sustaining activities." Roth points out that he has difficulty with concentration, irritability, and multi-tasking. He also suffers from anxiety, depression, and post-traumatic stress disorder. Roth, however, makes no attempt to explain how these symptoms translate into an inability to independently care for himself or perform life-sustaining activities. The only evidence Roth points to directed at the limitations he suffers as a result of his symptoms is his inability to return to his prior occupation on a full-time basis. There

is no evidence, however, that his inability to work full-time means he cannot independently care for himself and perform life-sustaining activities. Roth cites no case in which the inability to work on a full-time basis, standing alone, satisfied this portion of the statute.

Roth relies on *Giebel v. Lavalley*, 2013 WL 6903784 (N.D. Ohio Dec. 31, 2013) in support of his position. There, the court determined that sufficient evidence existed from which a jury could conclude that the plaintiff could not independently care for herself and perform life-sustaining functions. In *Giebel*, however, plaintiff suffered from suicidal thoughts and impulses. As a result, her husband administered her medicine for fear that she may intentionally overdose. The court concluded that the inability to stop oneself from committing suicide is a "life-sustaining" activity and, as such a question of fact remained as to whether the damages cap applied.

For similar reasons, the Court finds *Ozmun v. Customer Engineering Services, Inc.*, Case No. CV 14-824745 (Cuy. Cty. Ct. Com. Pleas July 31, 2015) distinguishable. In *Ozmun* the court allowed the jury to determine whether the damages cap applied. But, in *Ozmun*, the psychological symptoms suffered by plaintiff resulted in an inability to leave her home, as well as disassociative episodes that caused trance-like symptoms. The plaintiff further often wished she was dead. The court determined that a reasonable juror might conclude that these limitations amounted to the inability to care for oneself and perform life-sustaining activities.

Roth does not claim to be suicidal. Nor is he unable to leave his home or suffer from disassociative episodes. Roth sustained serious injuries as a result of the accident. And, the Court does not doubt that Roth suffers from among others, anxiety, depression, lack of concentration, irritability, and memory issues. But, Roth presents no evidence as to the nature of

7

the limitations these symptoms cause. Roth points only to the fact that his symptoms result in an inability to engage in full-time work. The Court finds that this is insufficient, as a matter of law, to lift the noneconomic damages cap set forth in O.R.C. § 2315.18(B)(3), as a reasonable juror could not determine that Roth cannot care for himself and perform life-sustaining activities. Of note, lost wages are considered "economic damages" under O.R.C. § 2315.18(A)(2)(a) and are not subject to the damages cap in any event. As such, the Court's ruling applies only to limit Roth's recovery of noneconomic damages.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Enforce Non-Economic Damages Caps as to Plaintiff Greg Roth (Doc. 52) is GRANTED and defendants' Motion To Strike (Doc. 61) is DENIED.

    IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated: 6/1/21